UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**SAFEWAY, INC.,**

        **Plaintiff,**

v.                               **Case No: 6:22-cv-132-PGB-DCI**

**JAMES RIVER INSURANCE COMPANY,**

        **Defendant.**
_____/

## ORDER

    This cause comes before the Court on Defendant's Motion to Dismiss (Doc. 3 (the "**Motion**")), Plaintiff's response thereto (Doc. 17), and Defendant's reply (Doc. 23). Upon consideration, the Motion is due to be granted in part.

**I.    BACKGROUND**

    This case flows from an underlying insurance coverage dispute. In the related underlying action, non-party Oscar Alabarces ("**Alabarces**") sued Plaintiff Safeway, Inc., in state court on June 3, 2019, alleging Plaintiff tortiously caused him injury when he tripped and fell over a "Drive Up & Go" decal in the parking lot of one of Plaintiff's stores. (Doc. 3-1; Doc. 23, p. 3). Non-party Hoff & Smith Pro Building Maintenance, Inc. ("**PBM**") helped develop Plaintiff's "Drive Up & Go" initiative and aided in the installation of the decals over which Alabarces allegedly tripped. (Doc. 1-1, pp. 7–8). PBM obtained a commercial general liability insurance policy (the "**Policy**") from Defendant James River Insurance Company covering

PBM's work as part of its agreement with Plaintiff related to their "Drive Up & Go" initiative. (*Id.* at pp. 8, 48). Specifically, in a contract separate from the Policy, PBM and Plaintiff agreed that the "Coverage shall: [b]y 'Additional Insured' endorsement add as insured [Plaintiff] and any of its subsidiaries, partnerships, its directors, officers, agents, and employees with respect to the liability arising out of the work performed by or for [PBM;] [b]e endorsed to specify that the Contractor's insurance is primary and that any insurance or self-insurance maintained by [Plaintiff] shall not contribute with it."

In compliance with this separate contractual duty, PBM obtained coverage from Defendant James River Insurance Company through the Policy which incorporated an "Additional Insured" endorsement. (Doc. 1-1, p. 86). This "Additional Insured" endorsement amended and added to "Who Is An Insured" any party listed in the relevant Schedule, including any party "[w]here required by contract or written agreement." (*Id.*). However, the "Who Is An Insured" section also contained an exclusionary clause which stated that those "Additional Insured Person(s) Or Organization(s)" listed in the Schedule are included in the Policy's coverage "but only with respect to liability for 'bodily injury' or 'property damage' caused, in whole or in part, by 'your work'"—that is, the work of PBM in connection with the "Drive Up & Go" initiative. (*Id.*). Importantly, Alabarces did not also sue PBM or allege a separate cause of action for vicarious liability against Plaintiff for the work of PBM in the underlying personal injury action; indeed, PBM is

2

mentioned nowhere in the operative complaint for the underlying action. (*See id.* at pp. 133–35).

Nevertheless, Plaintiff filed a third-party complaint against Defendant, seeking a declaration that Defendant has a duty to defend and indemnify Plaintiff under the terms of the Policy against the claims asserted by Alabarces. (Doc. 1, ¶ 2). The state court severed Plaintiff's claims against Defendant from the underlying tort action. (*Id.* ¶ 4). Defendant removed the severed third-party complaint as amended from state court to this Court. (Doc. 1). Defendant then brought the instant Motion, arguing Plaintiff failed to state a claim for which relief can be granted. (Doc. 3). After Plaintiff responded and Defendant replied with leave from the Court, the Motion is ripe for review. (Docs. 17, 19, 23).

## II.  STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions and recitation of a claim's elements are properly disregarded, and courts are "not bound to accept as true a legal

3

conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Courts must also view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam).

In sum, courts must: reject conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim; accept well-pled factual allegations as true; and view well-pled allegations in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 679.

## III.  DISCUSSION

Defendant argues that, because non-party PBM is not "named in the underlying tort lawsuit," Defendant has no duty to defend or indemnify Plaintiff under a plain reading of the exclusionary clause of the Policy's Additional Insured endorsements. (Doc. 3, pp. 1–5). Plaintiff counters that when all reasonable inferences are drawn in its favor, the Policy should be read to implicate coverage, thus triggering Defendant's duty to defend. (Doc. 17). For the following reasons, the Court agrees with Defendant.

Although courts generally disfavor resolving contract interpretation issues at the motion to dismiss stage, insurance coverage disputes are regularly dismissed for failing to state a claim when "a review of the insurance policy and the underlying claim for which coverage is sought unambiguously reveals that the underlying claim is not covered." *Goldberg v. Nat'l Union Fire Ins. Co. of*

*Pittsburgh*, 143 F. Supp. 3d 1283, 1291 (S.D. Fla. 2015). This is, in part, because the duty to defend inquiry is based on whether the facts alleged in the underlying complaint can be fairly read to support coverage. *Capitol Specialty Ins. Corp. v. Ortiz*, No. 17-23329-CIV, 2018 WL 7291057, at *3 (S.D. Fla. Apr. 20, 2018) (citing *Goldberg*, 143 F. Supp. 3d at 1293). Here, there are no factual disputes; the parties disagree over the Policy's correct interpretation. The Court thus finds it appropriate to resolve the duty to defend issue now.

"[W]hether or not an insurer has a duty to defend [in an underlying action] depends solely on the allegations in the complaint and the terms of the insurance policy." *J.B.D. Const., Inc. v. Mid-Continent Cas. Co.*, 571 F. App'x. 918, 926 (11th Cir. 2014)[1] (citing *Nat'l Union Fire Ins. Co. v. Lennox Liquors, Inc.*, 358 So. 2d 533, 536 (Fla. 1977)). "An insurer has a duty to defend the entire suit when the complaint alleges 'facts that fairly and potentially bring the suit within policy coverage.'" *Id.* (citing *Jones v. Fla. Ins. Guar. Ass'n, Inc.*, 908 So. 2d 435, 442-43 (Fla. 2005)). This is sometimes called the "eight corners rule," a reference to the four corners of the relevant insurance policy and the four corners of the complaint of the underlying action. *Colony Ins. Co. v. Barnes*, 410 F. Supp. 2d 1137, 1139 (N.D. Fla. 2005). "The duty to defend is of greater breadth than the insurer's duty to indemnify, and the insurer must defend even if the allegations in the complaint are factually incorrect or meritless." *See Jones*, 908 So. 2d at 443 (citations

---

[1] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

omitted). Any doubts regarding the duty to defend are resolved in favor of the insured. *Id*. But when there is no duty to defend, there can be no duty to indemnify. *Trailer Bridge, Inc. v. Ill. Nat'l. Ins. Co.*, 657 F.3d 1135, 1146 (11th Cir. 2011) (citing *Fun Spree Vacations, Inc. v. Orion Ins. Co.*, 659 So. 2d 419, 422 (Fla. 3d DCA 1995)); *see also Fed. Ins. v. Applestein*, 377 So. 2d 229, 231 (Fla. 3d DCA 1979) ("It has thus been uniformly held that a determination that there is no duty to defend against a particular claim carries with it the inevitable conclusion that there is none to pay an eventual judgment which may be entered upon that claim.").

"[W]hen the essential facts of the case are not in dispute, it is appropriate for a district court to interpret an insurance contract to determine whether any ambiguities exist as a matter of law." *Trailer Bridge, Inc. v. Illinois Nat. Ins. Co.*, 657 F.3d 1135, 1141 (11th Cir. 2011) (citation omitted). "Under Florida law, insurance contracts are construed according to their plain meaning. Ambiguities are construed against the insurer and in favor of coverage. But a policy provision is ambiguous only if susceptible to more than one reasonable interpretation . . . ." *Shaw v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 605 F.3d 1250, 1252 (11th Cir. 2010) (internal quotation marks and citations omitted); *see also Sphinx Intern., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 412 F.3d 1224, 1228 (11th Cir. 2005) (in cases involving exclusions to insurance contracts, "the rule is even clearer in favor of strict construction against the insurer").

Consequently, the Court turns to interpret the relevant Policy text. The exclusionary clause at issue states that the Policy provides for "Additional Insured"

6

status for those parties implicated in the Schedule "but only with respect to liability for 'bodily injury' or 'property damages' caused, in whole or in part, by 'your work.'" (Doc. 1-1, p. 86). The parties do not here dispute that the "Additional Insured" Schedule could implicate coverage for Safeway as an Additional Insured. (Doc. 3, p. 3). PBM and Plaintiff's agreement that PBM would obtain insurance coverage providing Plaintiff additional insured status for PBM's work related to the "Drive Up & Go" initiative makes this clear. (Doc. 1-1, p. 48). Moreover, it is clear that "your work" implicates PBM's acts or omissions at Safeway locations while fulfilling its obligations for the "Drive Up & Go" initiative. (Doc 1-1, p. 10; Doc. 3, p. 3).

At the same time, numerous courts applying Florida law and interpreting clauses identical to or substantially similar to the one here in an "Additional Insured" endorsement have read the clause "injury, caused in whole or in part, by the [named insured]" in a limited way, requiring a pled count of vicarious liability in the complaint related to the named insured's actions in order to trigger policy coverage for the additional insured. *United Rentals, Inc. v. Mid-Continent Cas. Co.*, 843 F. Supp. 2d 1309, 1314 (S.D. Fla. 2012) (holding no additional insured coverage under an exclusionary clause that applied to injuries "caused, in whole or in part by" the named insured where claims in the underlying complaint did not allege vicarious liability for acts or omissions of named insured); *King Cole Condo. Ass'n, Inc. v. Mid-Continent Cas. Co.*, 21 F. Supp. 3d 1296, 1299 (S.D. Fla. 2014) (holding policy provided indemnity coverage for condominium association as

7

additional insured only to extent that association had been sued for vicarious liability resulting from negligence of a general contractor, as named insured, under a clause excluding coverage to injuries "caused, in whole or in part, by" the named insured); *Mid-Continent Cas. Co. v. Constr. Servs. & Consultants, Inc.*, No. 06-CV-80922, 2008 WL 896221, at *3 (S.D. Fla. Mar. 31, 2008) (finding no additional insured coverage where the underlying complaint did not allege that the additional insured was vicariously liable for the direct fault of the named insured due to a clause which excluded coverage for injuries "caused, in whole or in part, by" the named insured).

To illustrate, in *Amerisure Ins. Co. v. Seneca Specialty Ins. Co.*, wet cement fell on a family through a gap in the ceiling in a Walmart. No. 20-20442-CIV, 2020 WL 3317035, at *1 (S.D. Fla. June 18, 2020). The family sued Walmart for negligence. *Id*. Walmart thereafter sought additional insured coverage under a policy issued to the subcontractor, the named insured, who was hired for the ceiling maintenance and caused the cement to fall on the plaintiff-family. *Id*. at *2. The subcontractor, as the named insured, was not included as a defendant nor was a cause of action for vicariously liability alleged for its actions. *See id*. Crucially, the relevant insurance policy provided additional insured coverage "only with respect to liability for 'bodily injury' . . . caused, in whole or in part by" the named insured's acts or omissions. *Id*. The *Amerisure* court held this policy language excluded policy coverage to an additional insured when the complaint contained only allegations of direct liability against the additional insured, not allegations of

8

vicarious liability for the acts of the named insured. *Id.* at *7 (citing by analogy *Garcia v. Fed. Ins. Co.*, 969 So. 2d 288, 289 (Fla. 2007) (finding no coverage for additional insured under exclusionary clause applying to injuries "because of acts or omissions of" the named insured without allegations of vicarious liability for the acts of the named insured)). So too here. Even when interpreted in the light most favorable to Plaintiff, the Court finds that the exclusionary clause[2] in the Additional Insured endorsement means that additional insured coverage only applies if the underlying complaint brings claims of vicarious liability against the additional insured for the actions of the named insured.

Accordingly, Defendant would owe Plaintiff a duty to defend and indemnify the underlying dispute brought by Alabarces under the Policy as a matter of law if the underlying complaint alleged Plaintiff is vicariously liable for the acts or omissions of PBM in connection with its work on the "Drive Up & Go" initiative. The underlying complaint, however, makes no such allegations of vicarious liability; indeed, it does not even mention PBM.[3] (Doc. 1-1, pp. 133–35). As such,

---

[2] The exclusionary clause states that "but only with respect to liability for 'bodily injury' or 'property damage' caused, in whole or in part, by 'your work.'" (Doc. 1-1, p. 86).

[3] Plaintiff states that "upon information and belief, [p]laintiff [Alabarces] in the underlying tort lawsuit intends to amend his complaint to assert a claim for negligence against PBM, alleging PBM caused [p]laintiff to trip . . . and injure himself." The Court will not consider this potential amendment at this time. *See Century Sur. Co. v. Hallandale Beach Serv. Station LLC*, No. 10-21430-CIV, 2011 WL 13174906, at *2, n.1 (S.D. Fla. Mar. 21, 2011), *aff'd*, 490 F. App'x 237 (11th Cir. 2012) ("The plaintiffs in the state-court action have recently moved to amend the state-court complaint. At this time, however, the state court has not allowed the plaintiffs in the state-court action to amend their complaint. I therefore do not consider the proposed amended complaint, and do not express any views on whether [the defendant-insurer] would have any obligations to defend or indemnify under the allegations of that complaint.").

Defendant owed Plaintiff no duty to defend the underlying suit from its inception based on the current underlying complaint.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss (Doc. 3) is **GRANTED IN PART**.

2. The Complaint is **DISMISSED WITHOUT PREJUDICE**.[4]

3. The Clerk of Court is **DIRECTED** to close the file.

**DONE AND ORDERED** in Orlando, Florida on April 13, 2022.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record
Unrepresented Parties

---

Regardless, such a hypothetical amended complaint ultimately would not resolve the issue currently before the Court of whether Defendant had a duty to defend the underlying tort suit from its inception up until now. *See Smith & Nephew Inc. v. Fed. Ins. Co.*, 113 F. App'x 99, 102 (6th Cir. 2004) (holding the district court erred by considering whether a defendant-insurer had a duty to defend an underlying suit from its inception based on an amended complaint rather than from the date of the original complaint's filing); *see also Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co.*, 598 F. 3d 257, 273 (6th Cir. 2010) (affirming a district court which found that an insurer only had a duty to defend an underlying suit after the date of filing of the amended complaint which triggered the duty to defend, not from the date of the original complaint's filing which did not trigger the insurer's duty to defend).

[4] The Motion is denied only to the extent that the Court will not dismiss the case *with* prejudice. The Court pauses to note that nothing in this Order should be construed so as to limit Defendant's potential duty to defend the suit *after* any such amended complaint might be filed in the underlying action. While the Court leaves open the possibility that a duty to defend may yet arise, this Order establishes that Defendant had no duty to defend the suit from the outset based on the current operative pleading in the underlying action.